The Court, Your Honor. James Kuhn appearing on behalf of the Plaintiff Appellant in this case. The question is whether the Administrative Law Judge in this Social Security case properly considered the opinion of the treating doctor, Dr. Goss. The claimant in this case had suffered, among other impairments, a gunshot wound from a former girlfriend and had bullet fragments lodged about his left femoral neck, which is the part of the leg just below where the femoral head goes into the hip joint. His treating doctor, Dr. Goss, said that he could do a job that would allow him to sit, but that standing was a problem and that, in fact, he could not do any work that required him to be on his feet for any significant length of time. The ALJ said, I believe Dr. Goss. I credit his opinion compared to other opinion which conflicted with it. And here's the interesting part. I find it consistent with a physical capacities evaluation, which the ALJ then refers to. That physical capacities evaluation says this guy can be on his feet standing for two hours and walking around for four hours, six hours out of a working day. Well, that's, I think, the way it was posed to the vocational expert. Dr. Love. Right. Dr. Love does the PCE. That says 2 plus 4. Yeah, but I would say the way he posed it, and that's what I was troubled with. He makes it 2 to 4. 2 to 4. And if you go back and you look at the physical capacity, I think I'm looking at the right one, ER 44. That's where it says stationary stand two hours, move, walk about four hours. Right. The residual functional capacity that the ALJ assigns appears to be on your feet for two to four hours a day. The physical capacities evaluation seems to say 2 plus 4. I'm not sure that's important here. What the vocational expert finds is two jobs that require four hours a day on your feet, half the day. And what we say is simply that cannot mean the same thing as no significant amount of time. And this is a little unusual. Of course, many times we're here saying, well, the ALJ didn't give sufficient reasons for rejecting a doctor's opinion. Now, there was information from the doctors, including Dr. Goss, that he could do sedentary work. So what do we do if we agree with you? What's the remedy you're asking for? I think you send it back for payments as of his 50th birthday, which is in July or June of 2004. And that's what we say in the conclusion of our opening brief. Because at that point, the grids, the appendix 2 grids of the commissioner say, if you're 50 and you're limited to sedentary work, then you're disabled with this guy's profile. Sorry? What is significant length of time? Significant all at once. You can't stand for four hours all at once. You can't touch your feet on the ground, put weight on them for more than two to four hours. What is significant? Maybe that's just horribly ambiguous. Well, it's — Especially when the doctor doesn't follow up and say, you know what I mean? I mean, this guy shouldn't, and doesn't give him backup stuff that says, you know, significant means to me X. Okay. It is subject to interpretation, of course. I mean, the Secretary's own rules defining sedentary work don't say, you know, exactly this amount. They say this is a sit-down job, sedentary work, but occasionally you have to move from place to place. That's how they define it, the commissioner's own rules. I think if you look at Dr. Goss' opinion a little more, ER 570, and as the ALJ recognizes, he says, Dr. Goss really pins this primarily on standing and walking. That's the main limitation. Dr. Goss says also he could do a job where he needs to sit down. He could do a sedentary work. He could do sit-down work. And certainly the ALJ could have said, okay, here's what I think significant means. And maybe it could have been something like, you know, more than an hour or more than a half hour. There's some reasoning you could do around that. He doesn't do any of that. But isn't that so? The ALJ did do that. The ALJ in a way did do that. He says, I'm giving most credence to his treating position. Right. And I think, therefore, it's two to four hours. That's about as ‑‑ it's not like you draft a will. But that's pretty clear to say, doctor says it's any significant amount of time. I think two to four is not any significant amount of time. You would have to infer that. What he does is actually his rationale in terms at ER 46 is he says no significant amount of time. I find that to be consistent with the following physical capacities evaluation, which says really two plus four. And then we go from that to ending up with a residual functional capacity of two to four. That's not explained. Again, I don't think that's important. But I simply don't think that one can rationally say, if the word significant means anything, that something you do for half of the working day is not significant. And Dr. Goss doesn't just say asignificant. He says any significant amount of time. Well, he says more than that. I mean, he explains why. He talks about blood pressure and all the other things that are affected by being on his feet. He does. He also says that he thinks the more he's on his feet, the more pain it will cause, that his complaints are reasonable. And the PCE, the physical capacities evaluation, says the same thing. And also bemoans, frankly, that it's only a two‑hour. It says this is only a two‑hour evaluation. That's at ER 244 at the footnote. We're not talking about blocks of time. If he comes in, he stands for two hours, and then he walks for four hours. He could be standing for half an hour, then he'd be sitting for an hour or two hours, and then he may have to walk for half an hour. I mean, it's mixed up during the day. We're talking about cumulative amounts. And given the standard of review we have here, don't we have to defer? We're not ‑‑ if we were sitting de novo, we might be persuaded by your argument. But to the extent that we are reviewing a determination made by the ALJ on a deferential standard, don't we have to look at it in that context? The way we phrase it in our brief, it's not a deferential standard. We don't believe this is a substantial evidence question. We believe this is a rejection of the treating doctor. The ALJ may say, I believe him, but when he declares it consistent, not any significant standing, declares that to be consistent with four hours a day, he is discrediting it, in fact. He's saying, I'm not going to use it. He throws it out. He can't balance it there and have those two come out some way. One is X and one is not X. Just taking your argument, is the real problem, or is it a problem, that really what happened is the treating doctor was just pretty sloppy or pretty general. I'm sorry, pretty what? Pretty general in his statement. Maybe what the ALJ should have done was exercise the authority they have. And that's the problem. The problem is that, you know what, I want some more information from that treating physician. I want to know what he really is talking about, what he means. Ask for clarification. If so, that would be an error not to ask for clarification, but I'm not so sure it would be a given benefits error. That's right. If one were to interpret it that way, that's right. One would send it back and say, okay, go back to the treating doctor and get some clarification. Our view is that the words, these words, not any significant standing, can't be on your feet for any significant amount of time. That really means not very much at all. Sit there, do your work, get up, go get something, come back, sit there and do your work. That's what that means. Of course, one could say it's not clear. You could get more clarification. We don't require doctors to give numbers. Sometimes they do, sometimes they don't. But there's no case that says we have to have that. I think the ALJ simply erred in interpreting it that way at all, and therefore, he essentially threw it out. That's why we believe the standard review is he discredited it. He didn't give reasons. You've got to send it back for payment. Thank you. Thank you, counsel. Good morning, Your Honors. I'm Daphne Binet representing Commissioner Defendant Kelly Astru. At the outset, basically, Mr. Taylor's argument boils down to his argument that the ALJ's RFC determination was inconsistent or contrary to Dr. Goss's opinion, his various interpretations of Dr. Goss's opinion as being. Mr. Kuhn says that it's tantamount to rejection of the treating physician's opinion. What's your response? Well, we set forth a cite to Batson in our brief, Your Honor, and the Commissioner's position here is this is, in fact, a substantial evidence question, and I refer the Court to Batson v. Commissioner of Social Security, 359 F. 3rd, 1190, at page 1193, where the Court says the Commissioner's decision must be affirmed by us if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. And significantly, the Court said under this standard, under this standard, the Court's findings are upheld, is supported by inferences reasonably drawn by the interpretation. It's the Commissioner's position that, yes, there is evidence here to support more than one rational interpretation. Mr. Taylor's argument that the ALJ's RFC determination was contrary or inconsistent with Dr. Goss's opinion depends upon his various interpretations of Dr. Goss's opinion as limiting him to sedentary work, less than sedentary work, or not being able to stand or walk for 4 hours. This is at appellant's brief at 4 to 5, 7 to 9, appellant's reply brief at 1 to 5. However, Mr. Taylor's disagreement under this Court's standard review is not something that would establish ALJ's error, because the standard is if evidence exists to support more than one rational interpretation, it's the ALJ's conclusion that must be upheld. What if the doctor had said, you know, this guy can't stand or walk more than an hour and a half in a standard work day, suppose he had just said that, and the ALJ had reached the same decision, what would your answer to that hypothetically? Could the ALJ reach the same decision on this record if that's what the treating physician had actually said? Well, that's the conundrum here, Your Honor. He didn't actually say that. But if he had, if he had, right, hypothetically if he had, then he would have quantified it into something that would have been more akin to an RFC determination that could have translated. And that was the district court's whole point here was that Dr. Goss, in fact, had not done that. No, I understand. I'm saying what if he had? Well, if he had. If he had made that perfectly clear, that's what the treating physician said, then what would your position be today about this? And it's an hour and a half, Your Honor, for standing? Max. Max. Well, then I think that in the ALJ's conclusion here was, I think it was two to four hours. Correct. Well, then rather than interpreting his opinion, then I think he would have to provide reasons for rejecting it one way or the other. But it wasn't sufficient. It wasn't quantified here, Your Honor. And so under the recent case of Stubbs-Nielsen, this Circuit has held that it's entirely proper for the ALJ to read it in context with the rest of the record. But here's the problem I have. If you look at the doctor's statement, unless, is counsel correct, it's not required for the treating physician to quantify it? Well, he didn't do so. It would have been more helpful. Well, I know. So, I mean, he's not at fault. There's nothing wrong with Dr. Goss having given a rationale, which he did, which he said hypertension is very concerning and not well controlled. Anything that causes exertion, such as lifting or carrying or walking, can increase his blood pressure and could give him these symptoms and so on. The placement of the fragments in his hip are such that the more he is on his feet, the more pain he will be in. I do not believe that he could sustain work requiring him to be on his feet for any significant length of time. All right, now that's a statement. He doesn't say, and what I mean by that is that he can't be on his feet for an hour and a half or whatever it is. So then what the ALJ, as I understand, goes and looks to these other reports, which talk about being on your feet for two hours or walking for four hours. So he, let me finish my point. And then the ALJ quantifies it in the hypothetical as a range of two to four hours, which the vocational expert then translates in, does not require walking in excess of half the day. All right, so what that sounds like is they're not, the ALJ and the VE, because of it, isn't looking to the rationale for any significant length of time. Basically what he's done is translate any significant length of time as he can walk around, he can be on his feet for half a day. There's nothing in the VE's testimony that suggests that that's episodic. I have no idea whether the boxmaker or the other physician would require him to be on his feet for half a day, but I cannot see how it's rational to say that any significant length of time could equate to being on one's feet for four hours a day on a sustained basis. And there's nothing in the qualifier of either the hypothetical or of the VE testimony that suggests that those are episodic. Could I get that? Sure. Well, Your Honor, with respect to the boxmaker, the VE did say that there was no excessive walking. No, but the hypothetical, the question posed it as, does not require walking in excess of half the day, which would be up to the four hours. And the answer about boxmaker, there's no excessive walking, I don't know if that means, and I think it's rational to interpret as he wouldn't be walking more than half the day. Now, he may be walking full four hours, and that's just totally inconsistent with any significant length of time. Well, the Commissioner's response to that, with all due respect, Your Honors, first of all, the hypothetical question wasn't specifically raised below in briefing with respect to a deficient Step 5 determination. The sole issue was, as I recall, was whether or not the ALJ properly rejected the opinion. Well, that's exactly what he's done. And I don't believe there was briefing on Step 5, so the Commissioner's position would be that be waived. Second of all, I think under Menal v. Astru, under similar circumstances, and again, I'm just saying this based on my recollection, I think there was a similar issue about the VE, you know, the ALJ saying, or the RFC saying it required this amount, and the VE coming, and the court saying, well, you know, it doesn't necessarily require that. And then third, under Johnson v. Shalewa, VE has expertise to be able to give information as to a claimant's abilities to perform work given a specific RFC. Notwithstanding that the letter on its face says that no significant length of time. Well, and that's a question of interpretation, and the ALJ rationally interpreted that. He considered the record as a whole, which was the physical capacity evaluation document. No significant length of time is four hours of standing, even if the person can't. Even if the person has hypertension and all of the preconditions that the. . . I understand that, Your Honor. You're not going to let me finish my question, so I'm okay. Go ahead. That opinion, I understand that that's how you're reading it, Your Honor, Judge Ritter. I'm glad you understand. I understand that. But maybe I'm just. . . I don't understand. . . . too exastic here to get my point out here, but Dr. Goss's opinion did not exist in isolation. The district court recognized that. The ALJ could interpret that letter. He also had Dr. Williams' opinion in front of him, and I think the only restriction there was excessive lifting. He had the state agency's determination about. . . You're about to run out of time. Let me ask you the question. Did the ALJ, if he had some question about what significant length of time meant, in Dr. Goss's opinion, did he have an obligation to clarify? I don't think so, because I think under Stubbs Danielson, he could interpret that in the context of the record of the whole, and this court also reviews the records of the whole. The determinative substantial evidence supports the ALJ's conclusion, and here I think there's enough evidence. There's not only the physical capacity evaluation, there's Dr. Williams' opinion, there's the state agency opinion, and there's the physical capacity evaluation. And I say that with all due respect, Your Honor. I don't have that, because that just doesn't mean anything. I assume you respect. Thank you, counsel. Your time has expired. Mr. Kuhn, you had a little time left. You may use it if you wish. I guess I would say, Your Honor, only that it's one thing to evaluate something in context. It's quite another thing to declare a statement to be consistent with something  that you have. You have limited time. What is your answer to counsel's argument that you didn't make a step five challenge? I don't think we need to. Our challenge is to the failure of the ALJ to properly treat the treating doctor's opinion. What the V.E. does simply demonstrates that that was prejudicial, because the error made with the doctor's opinion translates into an RFC, which is given to the vocational expert, and the vocational expert comes back with a four-hour-a-day standing or walking job. That demonstrates that it was prejudicial error to disregard the no significant length of time opinion of Dr. Goss. Finally, I would say Stubbs-Danielson is about translating mental limitations into a limitation for simple work. It has nothing to do with this case. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Fernandez, Fisher